AO 106 (Rev 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Missouri

**FILED**
NOV 3 0 2021
U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
CAPE GIRARDEAU

In the Matter of the Search of )
)
Mr. G's Gun Shop, located at 313 East Main Street, East ) Case No.   1:21MJ4246 ACL
Prairie, Missouri )
)
)

## APPLICATION FOR A SEARCH WARRANT

I, **Beth Dallas**, a federal law enforcement officer or an attorney for the government request a search warrant and state under penalty of perjury that I have reason to believe that on the following property:

See Exhibit A

located in the ___EASTERN___ District of ___MISSOURI___, there is now concealed

See Exhibit B

The basis for the search under Fed. R. Crim. P. 41(c) is (check one or more):

☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. Sections 7201 and 7202; | Attempt to evade or defeat tax; Willful failure to collect or pay |
| 18 U.S.C. Section 922(a)(1)(A) | over tax; Manufacturing firearms without a license |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED HEREIN BY REFERENCE

☑ Continued on the attached sheet.
☐ Delayed notice of ___ days (give exact ending date if more than 30 days: ___ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*
Beth Dallas, S/A, ATF
*Printed name and title*

Sworn to, attested to, and affirmed before me via reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41.

Date: November 30, 2021

*Judge's signature*
Abbie Crites-Leoni, U.S Magistrate Judge
*Printed name and title*

City and state: Cape Girardeau, MO

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Beth Dallas, being first duly sworn, do hereby depose and state:

1.  I am a Special Agent ("SA") of the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF") assigned to the Cape Girardeau, MO Field Office. As such, I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516(1).

2.  I have been employed by ATF as an SA since September 2003. I have a Bachelor of Arts degree in Sociology with a concentration in Criminology from the University of Tennessee, and I am a graduate of the Federal Law Enforcement Training Center Criminal Investigator Training Program and ATF New Professional Training. In connection with my official duties, I investigate criminal violations of the federal narcotic laws, including, but not limited to: 21 U.S.C. §§ 841, 843, 846 and 848; money laundering laws, including, but not limited to: 18 U.S.C. §§ 1956 and 1957; firearms laws, including, but not limited to: 18 U.S.C. §§ 922 and 924; contraband cigarette laws, including, but not limited to: 18 U.S.C. § 2342(a); racketeering and conspiracy to commit racketeering laws, including, but not limited to: 18 U.S.C. § 1962(c) and (d); and state crimes of murder, conspiracy to commit murder, attempted murder and aggravated assault. I have been the case agent on numerous complex investigations including firearms trafficking organizations and armed drug-trafficking organizations dealing in cocaine, marijuana, heroin, methamphetamine and other controlled substances. I am familiar with numerous methods of investigation, including but not limited to: visual surveillance, questioning of witnesses, search and arrest warrants, pen registers, precision location information, directing confidential sources in undercover purchases of

firearms and various controlled substances, and confidential source debriefings. I have acted in an undercover capacity to purchase firearms and controlled substances from prohibited persons as well as armed narcotic traffickers. I have also conducted undercover agent debriefings. My specialized training includes, but is not limited to: acting in an undercover capacity, international firearms trafficking, gang investigations, complex case and conspiracy investigation methods, investigations into the manufacture, possession, and distribution of controlled substances listed within the Controlled Substance Act, executing search and arrest warrants involving drug, firearm and explosives offenses, gathering evidence, utilizing various methods of electronic audio and video surveillance, supervision and utilization of informants, and money laundering investigations. Finally, I have been the affiant in, and author of, prior court-approved affidavits seeking the authorization to search and seize evidence of violations on firearms laws, including, but not limited to 18 U.S.C. §§ 922 and 924.

3.     In 2021, the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) began an investigation on alleged straw purchases being conducted at a local firearms dealer, Mr. G's Gun Shop LLC (Mr. G's Gun Shop) located in East Prairie, Missouri. Mr. G's Gun Shop is owned by Keith Grissom. Grissom was issued a federal firearms license (FFL) on March 4, 2002. His most recent renewal of that license was on February 11, 2020 and expires on April 1, 2023. During the investigation, ATF agents conducted three (3) undercover purchases of firearms from Mr. G's Gun Shop utilizing confidential informants and undercover agents. Agents and informants purchased a total of eleven (11) firearms in which employees violated 18 U.S.C. § 924(a)(1)(A), making false statements in connection with the acquisition of a firearm as it related to straw purchasing.

4. On June 8, 2021, ATF applied for and received a federal search warrant in the Eastern District of Missouri, Southeast Division, to search the premises of Mr. G's Gun Shop, located at 313 East Main Street, East Prairie, Missouri, for evidence of violations of 18 U.S.C. § 924(a)(1)(A). On June 10, 2021, ATF Agents executed the federal search warrant. Items of evidence were seized pursuant to that warrant. In addition, agents conducted interviews of the shop's employees, to include the owner, Keith Grissom.

### Investigation of Keith Grissom – Violation of 26 U.S.C. § 7201 – Attempt to evade or defeat tax

5. Later in June of 2021, ATF agents participated in three proffer sessions with employees of Mr. G's Gun Shop. The employees were represented by their respective attorneys who were present along with Assistant United States Attorneys (AUSA). During the proffer sessions, one employee informed agents that Keith Grissom instructed the employees to maintain two (2) separate cash registers. One register, identified as the "black register", was black in color and located on one end of the ammunition counter. The second register, identified as the "white register", was white in color and located at the opposite end of the ammunition counter. The black register was utilized for small cash purchases, typically under $200.00, and credit or debit card transactions. The white register was utilized for large cash purchases, typically $200.00 or more, and only cash purchases. The employee indicated that Grissom instructed him/her to conduct the sales transactions in this manner. At the end of the day, the employee would only tally the day's sales from the black register. This again was at the direction of Grissom. The employee counted down the black register's cash, ran sales reports from the black register and prepared the day's bank deposit from only the black register. The employee also completed a daily sales sheet listing the date, day's total (sales)

and sales tax. The employee would staple the daily sales report generated from the black register to the back of this sheet. Agents took a photo of this sheet during the June 10, 2021 search warrant and corroborated the employees statements against the photograph of the sales sheet.

6. The white register was not counted down for deposit or had sales tallied for the day. The employee relayed that this register was maintained by Keith Grissom and that he was the only one allowed to count down or take cash from this register. At no time during the employee's tenure did cash from the white register's sales make it into the daily bank deposit prepared by the employee.

7. Another employee said that Keith Grissom would remove $100.00 bills from the white register and place them in a safe in his office. During the June 10, 2021 search warrant, agents searched a large safe in Grissom's office located in Mr. G's Gun Shop. Grissom provided agents the combination to the safe, which agents used to open the safe. Inside, agents observed another safe that when opened contained a large amount of cash. The smaller safe was closed, locked and returned to its original location in the larger safe.

8. Mr. G's Gun Shop sells firearms, ammunition, and a variety of firearm accessories, reloading supplies, hunting and fishing equipment, clothing and other items commonly found in an outdoors sporting retail shop. During a second proffer session, an employee told agents most of the firearm sales at Mr. G's Gun Shop were conducted through the cash only, white register. Agents tallied sales for June 1, 2021 to June 9, 2021 from the register tapes, both from the black register and white register. The black register tape totals matched the "Day Total" listed on the daily sales sheet for the corresponding dates. When combining the days total sales, as represented on the white register tape and black register tape, agents found a

large discrepancy. The following is a comparison of the sales tallied from both the black and white registers compared to the daily sales sheets:

| Dates | Black & White Register Total | Daily Sales Sheet Total |
|---|---|---|
| 06/01/21-06/09/21 | $10,471.73 | $3,573.91 |

9.  The total sales from June 1, 2021 to June 9, 2021 totaled $10,471.73. The total sales listed on the daily sales sheet, derived from the black register, for the same date range totaled $3,573.91.

10. The employee stated that these daily sales sheets were maintained in the store for the entire month, recording the daily sales activity of only the black register. At the end of the month, the sheet was stored in a file cabinet inside the store. The employee stated that Jennifer Grissom, wife of Keith Grissom, would collect these sheets and provide them to Grissom's tax preparer in Sikeston, Missouri.

11. Agents also seized bundles of price tags during the June 10, 2021 search warrant. These price tags were used by Mr. G's Gun Shop employees to assist in tracking the acquisition and disposition of firearms acquired and sold through the store. The tag listed the make, model and serial number of the firearm, the location of the firearm in the Acquisition and Disposition (A&D) Book, and the sale price of the firearm. During a proffer session, an employee stated that the price of firearms sold in the store was determined by Keith Grissom and was rarely, if ever, negotiated down from the listed price. Agents tallied the sales tags from June 1, 2021 to June 9, 2021. The following is a comparison of firearm tag totals and the daily sales sheet:

| Date | Firearm Tag Totals | Daily Sales Sheet Totals |
|---|---|---|
| 06/01/2021 | $899.95 | $397.29 |
| 06/02/2021 | No tags | $329.23 |
| 06/03/2021 | No tags | $340.83 |
| 06/04/2021 | $3,519.75 | $343.43 |
| 06/05/2021 | $989.85 | $437.66 |
| 06/06/2021 | No tags - Closed | No sales - Closed |
| 06/07/2021 | $249.95 | $510.20 |
| 06/08/2021 | $419.95 | $420.17 |
| 06/09/2021 | $539.90 | $795.10 |
| Totals: | $6,619.35 | $3,573.91 |

The sample of firearm price tags compared to the daily sales sheet, which is derived only from the black register, corroborates the employee's statements that a majority of the firearm sales are conducted on the white register, and therefore are not reported on the daily sales sheets completed for Grissom's tax preparer.

12. As a part of the investigation, agents requested and served grand jury subpoenas to distributors for records of inventory ordered and method of payments made by Keith Grissom for Mr. G's Gun Shop. Agents received and reviewed records from twenty companies dating from January 2017 to October 2021. In summary, Keith Grissom was listed as the account holder for Mr. G's Gun Shop and party responsible for the orders. Orders were shipped to Mr. G's Gun Shop directly and were made for a variety of products to include, but not limited to, firearms, ammunition, component parts and accessories. Payments made by Grissom were made by credit card, Automated Clearing House (ACH), checks from Mr. G's Gun Shop LLC

checking account, Western Union Money Orders, MoneyGram Money Orders and money orders obtained from the United States Postal Service (USPS). Not all companies subpoenaed provided methods of payment. Two companies, RSR Group and Kimber returned records of Mr. G's Gun Shop submitting payments in the form of Western Union Money Orders, MoneyGram Money Orders and money orders obtained from the USPS. Often, these monetary instruments are purchased using cash at in-person locations. Kimber submitted a complete record for method of payments made to the Mr. G's Gun Shop account (account number 31280) from 2017 through the end of 2020. Kimber also provided images of the monetary instruments they received as payment to the account. Each money order contained "Kimber" or "Kimber Mfg" handwritten on the Pay to/Pay to the Order of line. The money orders also had handwritten "Mr G's" and sometimes the account number "31280" on the note lines. The images depict paper copies of the money orders, like those issued when purchasing money orders in person with cash. Of the $50,747.00 in payments made to Kimber, $20,574.00 in payments were made by Western Union Money Order or Postal Money Orders issued by the USPS.

13. Your affiant, through conversations with veteran IRS special agents who are familiar with this investigation, knows that individuals who hide, conceal, or attempt to hide or conceal a complete representation of sales made from their business, do so in an effort to evade the assessment of taxes owed to the federal government; in this case income derived from cash sales. In these same conversations, IRS agents relayed that individuals attempting to evade tax will sometimes operate using cash in order to avoid creating a record of the cash income they are trying to hide. By taking the extra step to convert cash income into money orders and pay expenses, Grissom avoids creating a record of the cash income. Individuals

will also attempt to hide assets, like large stashes of cash kept outside normal, secure banking accounts.

14. Given that employees of Mr. G's Gun Shop were instructed by Keith Grissom to use two separate cash registers, one specifically for cash only transactions; that only one register was ever tallied for a daily sales sheet; that those sheets were then provided to the tax preparer listing only the sales from one register; that a summation of cash register rolls and gun price tags for June 1, 2021 to June 9, 2021 did not match the reported daily sales recorded on the daily sales sheet; that $20,574.00 in payments made to Kimber were by money orders likely purchased with cash; and that agents observed a large amount of cash stored in a safe maintained by Keith Grissom, your affiant believes probable cause exists that Keith Grissom is attempting to evade tax by underreporting earned income and hiding cash assets that cannot be accounted for or traced.

### Investigation of Keith Grissom – Violation of 26 U.S.C. § 7202 – Willful failure to collect or pay over tax

15. In June 2021, ATF agents participated in proffer sessions with employees of Mr. G's Gun Shop. Each employee stated that they were paid wages in cash from Keith Grissom. The cash would be taken from the white cash register to pay the employees. None of the employees reported receiving a W-2 from Grissom and no tax withholdings were ever taken out of their pay. All three employees stated they were paid a flat rate of $9.00 cash per hour. Mr. Joseph Shane Palmer did report receiving additional cash compensation for his gunsmithing services, but that amount varied and was always determined by Grissom.

16. Keith Grissom, by definition is an employer[1], has an obligation to withhold employee FICA and income tax from wages he paid his employees and to pay over those withheld amounts to the United States. Given that his employees stated they never received any W-2 or withholding statements and that they were paid in cash from the white cash register, your affiant believes probable cause exists that Grissom willfully failed to collect or truthfully account for and pay over tax to the United States.

### Investigation of Keith Grissom – Violation of 18 U.S.C. § 922(a)(1)(A) – Manufacturing firearms without a license

17. The Gun Control Act of 1968 (GCA), 18 U.S.C. § 923(a), provides, in part, that no person shall engage in the business of importing, manufacturing, or dealing in firearms until he has filed an application with and received a license to do so from the Attorney General. The term "manufacturer" is defined by 18 U.S.C. § 921(a)(10) as any person engaged in the business of manufacturing firearm or ammunition for purposes of sale or distribution. As applied to a manufacturer of firearms, the term "engaged in the business" is defined by 18 U.S.C. § 921(a)(21)(A) and 27 CFR 478.11, as a "person who devotes time, attention and labor to manufacturing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale of distribution of the firearms manufactured". In Revenue Ruling 55-342 (C.B. 1955-1, 562), ATF's predecessor agency interpreted the meaning of the terms "manufacturer" and "dealer" for the purpose of firearms licensing under

---

[1] 26 U.S.C. § 3401(d)(1) – Employer – For purposes of this chapter, the term "employer" means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person, except that if the person for whom the individual performs or performed the services does not have control of the payment of the wages for such services, the term "employer" (except for purposes of subsection (a)) means the person having control of the payment of such wages.

the Federal Firearms Act, the precursor statute to GCA. It was determined that a licensed dealer could assemble firearms from component parts on an individual basis, but could not engage in business of assembling firearms from component parts in quantity lots for purposes of sale or distribution without a manufacturer's license. ATF has interpreted the term "manufacturer" under the GCA to mean any person who engages in the business of making firearms, by casting, assembly, alteration, or otherwise, for the purpose of sale or distribution. Such persons must have a manufacturer's license under the GCA, maintain permanent records of manufacture, and submit to annual manufacturing reports. Therefore, a person who manufactures a firearm will require a manufacturer's license if he/she devotes time, attention, and labor to such manufacture as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured.

18. This information regarding the necessity of having a manufacturing license to assemble firearms for profit, was published as part of ATF Rule 2010-10 and is provided to firearm industry members, including FFLs, as a routine course of business. ATF Industry Operation Investigators (IOIs) covered this topic with Keith Grissom when he initially obtained his dealer's license and again when IOIs conducted an inspection of Grissom's business and records in 2016. Grissom acknowledged and reaffirmed this knowledge by initialing and signing the document "Acknowledgement of Federal Firearms Regulations" dated September 21, 2016. Your affiant learned from IOI Simon Irvin that IOI Irvin specifically covered the manufacturing rules with Grissom during the 2016 inspection.

19. Keith Grissom has never applied for or received a manufacturer's license. He has only applied for, received and renewed a dealer's license allowing him, or his employees, to sell firearms and conduct gunsmith activities[2].

20. ATF agents seized Acquisition and Disposition (A&D) books marked "20", "21", "22", "23" and "24" from Mr. G's Gun Shop during the June 10, 2021 search warrant. These books memorialize the firearms acquired and disposed, sold or transferred by Mr. G's Gun Shop from September 16, 2019 through the date of the search warrant. During a proffer session, one employee stated that he/she was responsible for logging in firearms as they were received by the shop. The employee would record the Manufacturer and/or Importer, Model, Serial Number, Type, Caliber or Gauge, Date (of acquisition), and From Whom Received listing the name/address or name/FFL license number for each firearm received or purchased by Mr. G's Gun Shop. Agents noticed that some entries listed the term "lower receiver" as the type of firearm, only to be crossed out with a single line and the term "pistol" or "rifle" or "shotgun" written in its place. Agents questioned the former employees about these firearm entries and why the corrections were made.

21. One employee explained that as lower receivers were ordered and received by the shop, he/she would enter that item as it was received: a lower receiver. This is the correct way to record a lower receiver into an FFL's inventory as the definition of "firearm" includes the firearm frame or receiver.[3] However, the changing of "lower receiver" to "pistol", "rifle" or

---

[2] A dealer is "engaged in the business" of gunsmithing, as defined by 18 U.S.C. § 921(a)(21)(D) and 27 CFR 478.11, when he/she receives firearms (frames, receivers, or otherwise) **provided by a customer** for the purpose of repairing, modifying, embellishing, refurbishing, or installing parts in or on those firearms. Once the work is completed, the gunsmith returns the firearm, and charges the customer for labor and parts.

[3] 18 U.S.C. § 921(a)(3) – The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an

"shotgun" changes the type of firearm entirely. Although considered a firearm by definition, a lower receiver is only one part of a firearm that must be assembled with other component parts to make that firearm capable of firing a projectile by the action of explosion.

22. The employee stated that once the lower receiver arrived at the shop, the employee would log it into the A&D book and create a price tag notating the location in the A&D book, the make, model and serial number of the lower receiver on the tag. The tag remained with the lower receiver. The employee further explained that he/she would change the firearm type in the A&D book at the direction of Joseph Shane Palmer, a former employee at Mr. G's Gun Shop. Mr. Palmer took the lower receivers and added component parts to assemble a "pistol", "rifle" or "shotgun" depending on the parts used. Mr. Palmer would then return to the employee with the price tag and inform the employee as to what type of firearm he assembled. The employee would then change the type of firearm in the A&D book, the price tag would receive a price determined by Keith Grissom, and the firearm was put on the display rack for sale with the tag attached. As the firearms were sold, the tags were collected and bundled together by date of sale. These bundles were maintained in a basket in a display case under the white register and in boxes throughout the store. The tags were kept for long periods of time. During the June 10, 2021 search warrant, agents found a box of bundled tags from 2018. Other boxes stored in the same vicinity were dated from 1996-2020.

23. Agents continued to review the altered entries and examined the ATF Form 4473s for these firearms. The firearm type listed on the corresponding ATF Form 4473s, would be consistent with the type of firearm assembled by Mr. Palmer from the lower receiver. It would

---

explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device.

also match what the employee changed the original lower receiver to, either "pistol", "rifle" or "shotgun". In reviewing the seized A&D books and corresponding ATF Form 4473s, agents found over one-hundred (100) instances of this same pattern: firearms entered initially as lower receivers and then changed to "pistol", "rifle" or "shotgun".

24. As a part of the investigation, agents requested and served grand jury subpoenas to distributors for records of inventory ordered by Keith Grissom for Mr. G's Gun Shop. Agents received and reviewed records from twenty companies dating from January 2017 to October 2021. In summary, Keith Grissom was listed as the account holder for Mr. G's Gun Shop and party responsible for the orders. Orders were shipped to Mr. G's Gun Shop directly and were made for a variety of products to include, but not limited to, firearms, ammunition, component parts and accessories. Your affiant observed orders placed by Keith Grissom for component parts that would be necessary to assemble firearms from lower receivers. Commonly, orders for component parts were made separately and from differing companies than orders placed for lower receivers. During proffer sessions, employees explained to agents that they were allowed to shop for firearms, replacement parts, lower receivers, and component parts online by placing items in a checkout status but could not officially place the order. All orders were made and approved by Keith Grissom.

25. More recently, records reviewed by agents indicate that Keith Grissom ordered four (4) lower receivers on October 4, 2021 from Sports South, a federally licensed firearms dealer.

26. On November 1, 2021, agents participated in a proffer session with Joseph Shane Palmer, a former employee of Mr. G's Gun Shop. Mr. Palmer admitted to assembling firearms from lower receivers at Keith Grissom's request that were then sold in Mr. G's Gun Shop.

Mr. Palmer stated that Grissom, another employee Rick Givens, and himself would assemble firearms from the lower receivers and component parts. These firearms were then sold in the shop at a profit.

27. Agents provided Mr. Palmer one of the A&D Books seized from the June 10, 2021, federal search warrant on Mr. G's Gun Shop. Agents asked Mr. Palmer about the firearms entered in the book on the acquisition side as "lower receivers" that were then marked out and replaced with "rifle", "pistol", or "shotgun". Mr. Palmer stated anything that was marked out in the book was a firearm built in the shop. Mr. Palmer said that firearms he and the others built were put on display for sale in the store.

28. Mr. Palmer stated Keith Grissom would purchase "kits". "Kits" is a term commonly used to describe component parts used to assemble firearms from lower receivers. At times, Mr. Palmer stated Grissom would have difficulty finding lower receivers or kits to purchase and assemble. Some firearm distributors would only allow individuals to purchase one or two lower receivers at a time. Mr. Palmer stated that Grissom asked him, Rick Givens and Grissom's stepson, Blake Smithson, to purchase lower receivers with their own money.

29. Agents received and reviewed records from Primary Arms, a firearm distributing company. Agents found four separate orders placed on July 3, 2020. Each order was placed by a different individual, with a different credit card, listing a billing address unique to each individual, and all orders shipping in the purchaser's name to the address for Mr. G's Gun Shop. Each order was placed for two (2) Anderson Manufacturing AR-15 Stripped Lower Receivers for a total of $104.99. The individuals who placed the orders were Rick Givens of East Prairie, MO, Keith Grissom of East Prairie, MO, Joseph (Shane) Palmer of East Prairie, MO, and Chad Grissom of East Prairie, MO. A total of eight (8) lower receivers were ordered

by these four individuals. On July 4, 2020, two more orders were placed with Primary Arms following the same pattern as the July 3, 2020, orders. These orders were placed by Blake Smithson of East Prairie, MO and Erin Collier of East Prairie, MO for a total of four (4) additional lower receivers.

30. Your affiant found all twelve (12) of these lower receivers logged into the A&D book as lower receivers received directly from Primary Arms, not the individuals who purchased the firearms. Ten (10) of the entries marked out lower receiver and replaced the type with "pistol", "rifle" or "shotgun". These same entries showed a disposition to ten different customers on different dates. This corroborates Mr. Palmer's statements that Keith Grissom would employ individuals, other than himself, to purchase inventory specifically lower receivers, that were then manufactured into firearms and sold at Mr. G's Gun Shop.

31. After further review of the A&D books compared to the subpoenaed distributor records, agents found lower receivers ordered by Keith Grissom that followed this same pattern. The lower receivers were logged into the A&D book as lower receivers, crossed out and replaced with "pistol", "rifle" or "shotgun". The corresponding ATF Form 4473s also confirmed this change listing "pistol", "rifle" or "shotgun" as the type of firearm transferred. This pattern was found over one-hundred (100) times in the seized A&D books, regardless if Grissom ordered the lower receiver or another individual ordered it on his behalf.

32. Mr. Palmer said that Grissom asked him to order other firearms, additional to the lower receivers, with his own money on several occasions. Mr. Palmer admitted to purchasing firearms with his own money on behalf of Grissom. Mr. Palmer stated he never took these firearms home and that they were inventory for the shop. Mr. Palmer stated he would normally

be reimbursed for his purchases in cash. On one large purchase, Mr. Palmer was reimbursed by personal check from Grissom.

33. Your affiant reviewed records received by Primary Arms and found a purchase made by Joseph (Shane) Palmer on December 23, 2020. Mr. Palmer purchased nine (9) firearms for a total of $5,579.91. The total of this purchase was by far the largest observed by agents ordered by Mr. Palmer in records received to date. I believe this is the large purchase Mr. Palmer described to agents during his proffer session. All of these firearms were logged into the A&D book from Primary Arms and not from Mr. Palmer.

34. Given the records and invoices listing lower receivers and component parts purchased by Keith Grissom and others between 2017 to present; the condition of certain firearm entries made in Mr. G's Gun Shop A&D books for lower receivers; the alteration of those entries from "lower receiver" to "pistol", "rifle", or "shotgun"; the explanation for those changes by multiple employees of Mr. G's Gun Shop as those firearms assembled by or at the direction of Keith Grissom; the statements made by Joseph Shane Palmer who admitted to assembling firearms from lower receivers and component parts for Keith Grissom and Mr. G's Gun Shop; that those assembled firearms were sold as a regular course of business in the shop as inventory for profit; that all ordering of the firearms, lower receivers and component parts were made at the direction of or by Keith Grissom; and that Keith Grissom has never applied for or received a manufacturing license to manufacture firearms, your affiant believes that probable cause exists that Keith Grissom and others, engaged in manufacturing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A).

35. Based on the aforementioned information, I respectfully submit that there is probable cause to search the premises described in Attachment A for the items listed in Attachment B.

*Special Agent Beth Dallas*
Bureau of Alcohol, Tobacco, Firearms and Explosives

### Summary regarding Attestation via Reliable Electronic Means pursuant to Federal Rule of Criminal Procedure 4.1(b)(2)(A)

After being placed under oath and during a telephone conference between the undersigned and ATF Special Agent Beth Dallas along with Assistant U.S. Attorney Julie A. Hunter on November 30, 2021, Agent Dallas attested to and affirmed the contents of the attached Application for Search Warrant and this Affidavit. She also attested to and affirmed the fact that she is the person who signed said Application and Affidavit, which were submitted to the undersigned via reliable electronic means (*i.e.* by email) prior to the telephone conference.

Sworn and subscribed before me this 30th day of November, 2021.

HONORABLE ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE